NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2750
_____

ABDOULAYE DIALLO,
AKA Boubacr Sese,
AKA Abdulai Tanu Jalloh,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A093-441-557)
Immigration Judge:  Honorable Mirlande Tadal
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 28, 2014

Before:  FUENTES, GREENBERG and VAN ANTWERPEN, Circuit Judges

(Opinion filed:  January 29, 2014)
_____

**OPINION**
_____

PER CURIAM

Abdoulaye Diallo, a/k/a Boubacr Sese a/k/a Abdulai Tanu Jalloh, a native and citizen of Guinea, initially entered the United States in September 1999. He subsequently applied for asylum, using the alias Abdulai Tanu Jalloh and claiming to be from Sierra Leone. His application was denied, and he was ordered removed in an order the Board of Immigration Appeals ("BIA") upheld in 2004. At some point, he returned to the United States. Diallo married a United States citizen in April 2011 and sought to adjust his status on the basis of that marriage (he was unable to do so because his wife was unavailable for the necessary interview because she had been incarcerated). In December 2011, about a month after his wife was incarcerated, he sought, and was granted, permission to travel to Guinea to see his terminally ill mother. After a short stop in Belgium, Diallo remained in Guinea until September 2012.

Diallo was not readmitted to the United States on his return because he had previously been removed. The Government charged him as removable under 8 U.S.C. § 1182(a)(6)(C)(i)[1] and 8 U.S.C. § 1182(a)(7)(A)(i)(I).[2] He conceded the charges and sought asylum, withholding, and protection under the Convention Against Torture

---

[1] "Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this Act is inadmissible."

[2] "Any immigrant at the time of application for admission . . . who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this Act, and a valid unexpired passport, or other suitable travel document, . . . is inadmissible."

("CAT") based on what he alleged to have experienced in Guinea while he was there to visit his gravely ill mother.

Specifically, in his affidavit and at his hearing, Diallo primarily described events that happened on August 27, 2012, August 28, 2012, and September 8, 2012. He claimed that he belongs to the largest opposition party in Guinea, the Union of Democratic Forces in Guinea ("UFDG"), and has served on the security team for its leader, Cellou Dallen Diallo, in the United States and in Guinea. On the security team on August 27, 2012, he and others were tear-gassed by police outside of Cellou Dallen Diallo's compound and en route to a protest rally. At checkpoints, others were arrested and injured. At the rally itself, police fired tear gas and bullets. Cellou Dallen Diallo and another opposition leader (and the former prime minister of Guinea), Lansana Kouyate, had to return to Kouyate's compound. There, they conferred with a government prosecutor and security officials about the situation; ultimately, the prosecutor guaranteed the leaders safe passage.

However, Diallo, on his way home, was arrested at a security checkpoint, beaten (among other things, a guard broke one of Diallo's toenails when he hit his foot with his gun), and detained after security forces saw a picture of Cello Dallen Diallo and Diallo's security badge in his car. He was released and driven home on August 28, 2012, after brokering a deal with a gendarme for his release in exchange for $500 and an agreement that he would not participate in UFDG activities. On that day, he went into hiding for the rest of the day, with the exception of a visit to a clinic from about 1:00 p.m. to 2:00 p.m.

3

Then, at an opposition rally that he attended as a UFDG security officer on September 8, 2012, he saw the gendarme with whom he had made the agreement. Fearful, he did not return home. Later that night, gendarmes came to his family's compound and searched for him there. He decided to leave Guinea, but before doing so, he learned from his father that a friend of his father had heard that security forces were planning to kill him at the final ceremonies in a football tournament later that month, if he attended, as he had wished to attend, with Cellou Dallen Diallo. Diallo's mother died the next day, but he did not return home, leaving for the United States soon thereafter instead. He noted that the hostility toward the UFDG is also based on hostility toward the ethnic group to which he belongs.

The Immigration Judge ("IJ") denied Diallo's applications on the basis of an adverse credibility finding and Diallo's failure to meet his respective burdens of proof. She also denied asylum as a matter of discretion.[3] The BIA rested its decision on the adverse credibility finding alone in regards to the asylum and withholding claims and did not reach the other bases for denial of relief. The BIA separately ruled on the CAT claim, holding that Diallo had not credibly established past torture and that there was no clear error in the IJ's determination that he had not established that he would face torture on his return.

---

[3] She nonetheless held that Diallo had corroborated the claims in his application.

Diallo, proceeding pro se, presents a petition for review. He argues that the BIA erred in upholding the IJ's decision denying his applications for asylum, withholding, and CAT relief. Informal Brief at 1. His main arguments are that the adverse credibility finding is not supported, in part because the agency misinterpreted the REAL ID Act when it relied on his "past statements and one stamp in his passport," Memorandum accompany Informal Brief at 3 & Informal Brief at 4, and that he presented sufficient evidence to show persecution, Memorandum accompanying Informal Brief at 3. He generally asks that the BIA's decision be reversed, Memorandum accompanying Informal Brief at 6, and at one point, specifically asks that the asylum and withholding rulings be reversed. Informal Brief at 5. The Government counters that the adverse credibility finding should stand given Diallo's prior fraud, a discrepancy between Diallo's testimony and the evidentiary record, and Diallo's failure to adequately and independently corroborate his claim. The Government also states that Diallo has waived his CAT claim.

We have jurisdiction over Diallo's petition pursuant to 8 U.S.C. § 1252(a). We consider questions of law de novo. See Gerbier v. Holmes, 280 F.3d 297, 302 n.2 (3d Cir. 2002). We review factual findings, such as an adverse credibility determination, for substantial evidence. See Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir. 2005). We evaluate whether a credibility determination was "appropriately based on inconsistent statements, contradictory evidences, and inherently improbable testimony . . . in view of the background evidence of country conditions." Chen v. Ashcroft, 376 F.3d 215, 223

(3d Cir. 2004). We afford an adverse credibility finding substantial deference, so long as the finding is supported by sufficient, cogent reasons. See Butt, 429 F.3d at 434. After reviewing the matter, we cannot say that the record compels a conclusion different from the one reached by the agency in regards to the credibility determination.

In affirming the IJ's decision, the BIA relied on an inconsistency that, as the BIA described it, goes to the heart of Diallo's claim.[4] Diallo testified that after he was released early in the morning on August 28, 2012, and returned home, he stayed into hiding for the rest of the day, leaving only for a short visit to a clinic in the early afternoon. R. 169. But, during the hearing, Diallo also testified that he took his passport to the French Embassy and applied for a visa. His passport includes an entry "Visa demandé le 28/08/12 à Conakry." R. 360. The French-qualified interpreter at the hearing translated the phrase as meaning "a request." R. 172. Counsel for the Government noted to Diallo that the stamp in his passport "seems to indicate that you requested a visa to France on that particular day." R. 173. Diallo responded, "But they refused to give me a visa." R. 174. He seemed to imply that the refusal was on August 28, 2012, but he did

_____

[4] In a pre-REAL-ID Act case, the discrepancies identified by the agency had to go to the heart of the claim to support the adverse credibility determination. See Gao v. Ashcroft, 299 F. 3d 266, 272 ( 3d Cir. 2002). Now, under the REAL ID Act, an adverse credibility determination can be based on inconsistencies that do not go to the heart of the applicant's claim, but inconsistencies must be considered as part of "the totality of the circumstances, and all relevant factors." 8 U.S.C. § 1158(b)(1)(B)(iii). However, under the circumstances, because the fact on which there is an inconsistency in this case is so central, it could serve as a sufficient basis to put in question the rest of Diallo's testimony. We do not need to consider the parties' competing arguments about the significance of Diallo's past fraud in the calculus.

not learn of the denial until after the rally and other events. R. 174. When asked when he applied for the visa, he said that he did not "remember exactly the date," and then explained that he "gave the passport to someone because on that embassy, you can pay someone to help you to get the visa." R. 174. He said that he had given the passport and photographs over previously and received it back later from a man who said, "I am sorry, I was not able to help you." R. 174. To explain why he wanted to leave the country before the events of August 27, 2012, and while his mother was terminally ill, Diallo further testified that he had planned to go to France because he was going "to buy some stuff and to come back to Guinea to sell them." R. 174.

As the BIA noted, the stamp in Diallo's passport indicates that he requested a visa on August 28, 2012. The translation of "demandé" is in the record, and Diallo did not deny that "demandé" means requested. A request for a visa at the French Embassy on August 28, 2012, conflicts with his testimony at the basis of his claim for persecution. It is inconsistent with his claim that he stayed in hiding on that day after being released from detention (with the exception of a trip to a clinic for treatment). Furthermore, the BIA had a basis for rejecting Diallo's alternative explanation, which involved references to "someone" and an unspecified date, as unpersuasive. For these reasons, we conclude that the adverse credibility finding was supported by substantial evidence.

Lastly, although the issue of waiver of the CAT claim is close, we cannot conclude, as the Government asserts, that Diallo did not challenge it at all. He clearly mentioned it in his informal brief. And he challenges the credibility determination that

7

figured in an alternative basis for the denial of CAT relief. Upon review, however, we conclude that the BIA properly denied Diallo's CAT claim.

For these reasons, we will deny Diallo's petition for review.